UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| GIANLUCA VACCHI, Plaintiff, v. E*TRADE FINANCIAL CORPORATION, Defendant. | Case No. **COMPLAINT** (JURY TRIAL DEMANDED) |

Plaintiff, Gianluca Vacchi, ("Vacchi" or "Plaintiff"), by and through his attorneys, Cinotti LLP and Carmel, Milazzo & DiChiara LLP, alleges as follows for his Complaint against Defendant, E*TRADE Financial Corporation ("E*Trade" or "Defendant").

## *INTRODUCTION*

1. Gianluca Vacchi has had remarkable success as an international social media celebrity, influencer, fashionista, and disk jockey. Plaintiff has managed to create a fundamentally new type of a male character: an extravagant millionaire dancing with beautiful ladies in exotic locations. Almost twelve million people are subscribed to Gianluca Vacchi's Instagram page to follow his adventures.

2. This action arises from E*Trade's wrongful and unlawful attempt to convert the persona and character created by Vacchi for its own commercial purposes and financial gain. Specifically, in or about mid-2017, E*Trade created, produced, and published a certain commercial containing a character that is essentially a clone of Vacchi, dancing with women on a boat while DJ'ing: conduct that based upon numerous YouTube videos, photographs, and music videos created and published by Vacchi, has become synonymous with the image and persona

created by Vacchi. Indeed, E*Trade's commercial is simply a rip-off of a number of videos created and published by Vacchi over the years. Notably, the character of the Infringing Video, as defined herein, made an appearance in another E*Trade's commercial several months later. An example of the substantial, and even striking similarity between the character of the Infringing Video, as defined herein, and Plaintiff's Character, as defined herein, is shown here.



Plaintiff's character (cropped screenshot from Instagram).

The complete screenshot from Instagram showing that even the rings of the characters are identical is attached in Exhibit A.



Screenshot of Infringing Video (second 01)



Plaintiff's character (cropped screenshot from Instagram).

The complete screenshot from Instagram showing that even the rings of the characters are identical is attached in Exhibit A.

3. Based upon the foregoing, Plaintiff alleges claims for copyright infringement, as well as false endorsement and misappropriation of protectable character, protectable scenes, and image and persona of "the coolest man on Instagram."

***THE PARTIES***

4. At all times material hereto, Plaintiff was, and is, an individual residing in Milan, Italy.

5. Upon information and belief, Defendant, E*TRADE Financial Corporation, is a Delaware corporation having its principal place of business at 1345 6th Ave, New York, NY 10105. Upon information and belief, Defendant is a financial services company that provides services for individuals and institutions that are investing online.

6. Upon information and belief, Defendant is the owner of the copyright of the Infringing Video, as defined herein. Alternatively, upon information and belief, Defendant had the power and ability to supervise or control the activities of one or more third parties that authored, produced and published the Infringing Video and had a financial interest in the conduct of such parties as alleged herein.

***JURISDICTION AND VENUE***

7. This Court has original subject matter jurisdiction over this action and the federal claims asserted herein, pursuant to 28 U.S.C. § 1331 because this action arises under the laws of the United States and, more specifically, Acts of Congress relating to copyrights (the Copyright Act of 1976, as amended) and the Lanham Act of 1946, as amended. This Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367, as Plaintiff's claim under New York State law arise from the same nucleus of operative facts and are part of the same case or controversy that give rise to the claims under Federal law.

8. This Court also has subject matter jurisdiction under 28 U.S.C. § 1332 in that complete diversity of citizenship exists among the parties and the amount in controversy is in excess of $75,000.00 exclusive of interest and costs.

9. This Court has personal jurisdiction over the Defendant pursuant to CPLR 301 as it is a corporation that is licensed to do business in New York and maintains its principal place of business in New York.

10. The venue of this action is properly laid in this Judicial District pursuant to 28 U.S.C. § 1391(b)(3) because Defendant resides in this Judicial District by maintaining its principal place of business in this District.

## *FACTUAL BACKGROUND*

### I. Plaintiff. The Coolest Man on Instagram

11. Plaintiff is an individual resident of Milan, Italy, who is an entrepreneur, a YouTube and Instagram celebrity, a world-renowned DJ and fashionista with more than 11.9 million followers of his Instagram page.

12. Similarly, Vacchi has more than 1.77 million people following Vacchi's Facebook page.

13. Plaintiff is also employed as the President, SEA Società Europea Autocaravan S.P.A., a large Italian manufacturing company, and is a widely-known professional snooker player.

14. Plaintiff is famous for the production and posting of short videos, pictures, and musical clips with a character of Plaintiff's own creation – a particularly eccentric millionaire, who is engaging in a distinctive dance routine in the ambience of luxury surrounded by, and dancing with, stunningly attractive young ladies and demonstrating his lavish lifestyle.

15. Plaintiff's appearance is also distinctive. Vacchi is a mature gentleman in prime

physical shape, has gray hair and (usually) a gray beard, and is not shy demonstrating a heavily tattooed torso ("Plaintiff's Character").

16. Overall, Vacchi is not a typical Instagram star: having elected to show only specific moments of his personal life to the general public, Vacchi took social media by a storm. He created the icon, the image of a successful daring business person who is capable of doing things his own way. Plaintiff's character is centered upon enjoying life, working hard and playing hard, without taking himself too seriously. Plaintiff's Character received a renowned nickname: "Mr. Enjoy."

17. Plaintiff is the author and creative director of hundreds of videos and thousands of photographs which have been uploaded and posted on Instagram, and other social media sites, all of which focus on and highlight Plaintiff's Character and his not-so-typical lifestyle.

18. Plaintiff actively promotes the Plaintiff's Character through his Instagram channel, YouTube channel, his website, and other social media (collectively, "Plaintiff's Social Media").

19. Plaintiff typically uses hash-tag "#gvlifestyle" in connection with Plaintiff's Social Media and Plaintiff's Character.

20. Plaintiff published the first video of the "#gvlifestyle" series on July 30, 2013 (https://www.youtube.com/watch?v=f2Geicj82Fk) and continued regular publications through Plaintiff's Social Media about the Plaintiff's Character and his extravagant world, utilizing his image and likeness for both promotion of Plaintiff's Social Media and endorsing various brands and celebrities.

21. In the year 2016, Plaintiff's media presence rose to a crescendo. Plaintiff and Plaintiff's Character became a world-famous Instagram and YouTube persona, recognized in countless magazine and internet articles, including GQ Magazine, emptylighthouse.com, hellomagazine, vix, and many other Internet magazines and portals aggrandizing Plaintiff for his

unique character.

22. Vacchi had been internationally recognized and commended. He was described, as a "multimillionaire entrepreneur" (Business Insider), a "hedonism-loving playboy" (the Independent), and a "self-made multimillionaire" (Yahoo).

23. In 2016 Plaintiff was labeled "the coolest man on Instagram" by GQ Magazine (https://www.gq-magazine.co.uk/article/gianluca-vacchi-coolest-man-on-instagram).

24. Plaintiff was also described as "the 50-year-old millionaire who's cooler than Dan Bilzerian" (https://www.gqindia.com/content/gianluca-vacchi-millionaire-is-the-new-coolest-man-on-instagram/).

25. On December 24, 2018, GQ, citing The Evening Standard, named Vacchi "as the fourth most influential fashion Instagrammer, earning up to $16,750 for a single post."

26. In fact, even a simple Google search for "dancing millionaire" inevitably shows Plaintiff in the top results.

27. Plaintiff hasn't just captivated the Internet's fashion sector. The international business community also recognized the power of promotion with Plaintiff's Character and Plaintiff's likeness.

28. For instance, in or about January, 2016 the National Bank of Georgia[1] introduced a Christmas commercial with the dancing millionaire, Plaintiff's Character. In the commercial, Vacchi and Giorgia Gabriele danced one of their favorite dances, with Vacchi's torso traditionally exposed and tattoos markedly visible. The commercial was so successful that many United States residents registered as clients of the bank.

29. Ultimately, using his own likeness and image, Plaintiff has authored and created a

[1] The country in Eastern Europe, not the State of the United States.

unique character based on Plaintiff's personality and managed to attract the audience by his adventures, having become the style icon, the supermodel, and one of the most influential social media moguls.

## II. Plaintiff's Character and his Visual Image

30. Plaintiff created and developed the unique Plaintiff's Character.

31. The stories about Plaintiff's Character were delivered to the general public through Plaintiff' Social Media.

32. Plaintiff had no intention to create just an image of a random playboy's image – he intentionally picked the features that would suit his personality and distinguish him from other visually recognizable characters and Internet celebrities.

33. Plaintiff's Character is a mature man in prime physical shape with salt-and-pepper hair. Plaintiff's Character's likeness is depicted in his numerous Instagram videos and pictures and in numerous YouTube Videos, including Plaintiff's Instagram post dated October 20, 2016, with 393,592, shown below:



34. Plaintiff's Character consistently appears wearing square-shaped glasses of various colors of a distinctive style. The images of Plaintiff's Character from pictures and videos dated prior to the Infringing Video are attached hereto as Exhibit A.

35. The facial hair of Plaintiff's Character is gray/salt-and-pepper and always present and neatly trimmed.

36. Another distinct characteristic of Plaintiff's Character is his proudly exposed body with an abundance of tattoos. GQ Magazine-UK described Vacchi as "a man only marginally less tattooed than Melville's Queequeg…" (https://www.gq-magazine.co.uk/article/gianluca-vacchi-coolest-man-on-instagram).

37. Further, Plaintiff's Character would not be complete without the right choice of environment and extra features that add an elegant way to show his muscular tattooed body. Vacchi chose dancing for this purpose.

38. Flipboard noted that Vacchi is "the silver influencer who dances in his pants for a living" (https://flipboard.com/@generalcha0s/gianluca-vacchi-%E2%80%93-the-silver-influencer-who-dances-in-his-pants-for-a-living/a-e99T3ZYGTw2YSsSVykdv0A%3Aa%3A4839747-b82e527c25%2Fco.uk).

39. Additionally, Plaintiff actively promoted the background legend about the character: millionaire tired of his business routine who decides to dedicate his life to music, dancing, and an opulent lifestyle.

40. Plaintiff's Character represented a fresh and novel approach to the image of a fashionista and a successful man. Plaintiff has designed the character who managed to demonstrate his wealth through elegance, his masculinity through dancing with an exposed tattooed torso, and his open-mindedness through not taking life too seriously and not being afraid to laugh at himself.

Vacchi designed a new concept of a wealthy playboy who is emotional, likeable, creative, and does not need to hide his age.

41. One of the popular backgrounds where Plaintiff's Character typically dances is the ambience of a luxury marine-styled environment such as beach, yacht, open-air swimming-pools.

42. Plaintiff's Character and his likeness have been depicted in numerous photographs and videos on Plaintiffs Social Media accounts during the period from 2013 to present developing a unique character over time, emphasizing the most distinct grains of his character.

43. Plaintiff's Character and Plaintiff's likeness appeared in more than 500 videos and thousands of photographs.

44. During that the time Plaintiff's Character, his image, and likeness have been internationally recognized by an audience in the millions.

45. In all instances of commercial marketing and promotion of Plaintiff's image, likeness, or identity by third parties, Plaintiff negotiated and expressly granted authority for such use pursuant to agreed-upon terms and conditions and for agreed-upon compensation.

**III. Plaintiff's Likeness and Plaintiff' Videos**

46. Plaintiff owns exclusive intellectual property rights to Plaintiff's personality, image, likeness, and Plaintiff's Character.

47. Plaintiff is a foreign citizen and did not register all of his videos and photos in the United States.

48. The following motion pictures authored by Plaintiff are registered with the United States Copyright Office:

(i) the motion picture published July 30, 2016 (registration number PA0002158110);

(ii) the motion picture published July 17, 2016 (registration number PA0002158120);

(iii) the motion picture published July 13, 2016 (registration number PA0002158117);

(iv) the motion picture published July 30, 2016 (registration number PA0002158124); and

(v) the motion picture published July 16, 2015 (registration number PA0002159223).

The Plaintiff's motion pictures registered with the United States Copyright Office shall be collectively referred to as "Plaintiff's Videos."

49. Plaintiff is the author of numerous motion pictures depicting Plaintiff's Character and Plaintiff's likeness on Plaintiff's Social Media that Plaintiff exclusively owns, but not registered, within the United States (collectively, "Plaintiff's Unregistered Videos"). URL addresses of examples of Plaintiff's Unregistered Videos with Plaintiff's characters are attached hereto as Exhibit B.

50. The photos on Plaintiff's Social Media accounts (collectively, "Plaintiff's Photos") also depict Plaintiff's Character and his exploits.

51. Plaintiffs owns exclusive intellectual property rights to Plaintiff's Videos, Plaintiff's Unregistered Videos, and Plaintiff's Photos.

**IV. Defendant's Infringing Video**

52. By the year 2017 Plaintiff's character literally and figuratively turned heads, and was immensely popular.

53. Upon information and belief, Defendant, as any other Internet user, had access to Plaintiff's social media accounts and, therefore, Plaintiff's Videos, Plaintiff's Photos, Plaintiff's Unregistered Videos, Plaintiff's likeness and Plaintiff's Character.

54. Upon information and belief, on June 19, 2017, Defendant, in order to promote its services, uploaded a video commercial titled "E*TRADE Commercial – Hard Work" (hereinafter

referred to as the "Infringing Video") on Defendant's YouTube channel (available at https://www.youtube.com/watch?v=_BoUXcdFgYc).

55. Upon information and belief, on Defendant also uploaded the Infringing Video through ispot.tv website (available at https://www.ispot.tv/ad/wOb9/etrade-hard-work).

56. The Infringing Video depicts a male character stunningly identical to Plaintiff's likeness partying and dancing with young ladies on a yacht. The resemblance was, in fact, so extreme that the Internet users began associating the character in the Infringing Video with Plaintiff's Character.

57. For instance, ispot.tv comment's section indicated that users clearly see the striking resemblance and names Vacchi as the person depicted or attempted to being depicted in the Infringing Video. (https://www.ispot.tv/ad/wOb9/etrade-hard-work)

58. Plaintiff himself found out about the existence of the Infringing Video due to numerous questions whether he promoted Defendant's services or was retained by Defendant.

59. The Infringing Video is comprised of short visual and audio segments arranged in montage fashion depicting a character that is essentially identical, in appearance and character, to Plaintiff's Character. Both the selection of particular visual and auditory content and the particular elements of artistic expression included in the Infringing Video are showing that the scenes and the male subject of the Infringing Video were simply copied from the scenes of Plaintiff's Videos and Plaintiff's Photos.

60. The Infringing Video featured a middle-aged male almost identical to the appearance to Plaintiff, and possessed the same unique personal features of Plaintiff's Character as developed in the pictures and in the videos by Plaintiff through his social media accounts.

61. The main character of the Infringing Video concludes with the words "The harder

you work the nicer the vacation your boss goes on."

62. The main character of the Infringing Video shares many similarities with Plaintiff, i.e., he is middle-aged, with gray/salt-and-pepper hair and beard, is heavily tattooed, wears black rim glasses, is shirtless, and is in good physical shape.

63. The Infringing Video closes with a number of slogans promoting Defendant's brand name and services and prominently displaying that Defendant is the copyright owner of the Infringing Video (at second 13 of the Infringing Video).

64. The Infringing Video was aired extensively on YouTube website where it received approximately 2,566,979 views as of the date of the instant Complaint as well as featured on and spread through various Internet platforms such as www.adsoftheworld.com (https://www.adsoftheworld.com/media/film/etrade_hard_work), adage.com (https://adage.com/creativity/work/hard-work/52044), ispot.tv (https://www.ispot.tv/ad/wOb9/etrade-hard-work), digiday.com (https://digiday.com/marketing/five-new-punchable-ads/), www.adforum.com (https://www.adforum.com/talent/81878411-jonathan-goldmacher/work/34557621), and multiple other websites.

65. Overall, widespread dissemination through social media insured that millions saw the Infringing Video.

66. Furthermore, the main character of the Infringing Video made, at least, one more appearance in Defendant's commercials.

67. Upon information and belief, Defendant, on or about August, 2017, in order to promote its services, disseminated a video commercial titled "E*TRADE TV Commercial, "Yacht Life"" (hereinafter referred to as the "Second Infringing Video") through the Internet.

68. The Second Infringing Video currently is available through multiple sources including the website ispot.tv (https://www.ispot.tv/ad/wB_X/etrade-yacht-life) and YouTube, where it was apparently re-shared and disseminated by multiple channels (https://www.youtube.com/watch?v=Uxo-Qw0OSBc – "tv commercials;" https://www.youtube.com/watch?v=08rzC1VOO-8 – Jerilyn Longerbeam, etc.)

69. The Second Infringing Video depicts a young gentleman in an orange-shirt dancing in an unusual manner on the board of the yacht that appears to be the yacht from the Infringing Video. The Second Infringing Video explains that "the dumbest guy in high school just got a boat."

70. The main character of the Infringing Video (the "E*Trade Character") is also present in the Second Infringing Video. The E*Trade Character is dancing in the Second Infringing Video in the manner, identical to its appearance in the Infringing Video, again, undistinguishably identical with the Plaintiff's Character.

71. The Second Infringing Video indicates Defendant as the copyright owner of the Second Infringing Video (at second 28 of the Second Infringing Video).

72. Plaintiff has never licensed or otherwise authorized Defendant to copy, distribute, or publicly disseminate the Plaintiff's likeness or Plaintiff's Character, the Plaintiff's Videos, Plaintiff's Unregistered Videos, Plaintiff's Photos, or to make derivative works based upon them.

73. Defendants' conduct is unlawful. It is proscribed by the United States Copyright Act, by Lanham Act, and by N.Y. Civ. Rights Law § 51. In this action, Plaintiff seeks damages attributable to the infringement.

## V. Similarities Between the Plaintiff's Character, Plaintiff's likeness and the E*Trade Character

74. The Infringing Video is a commercial promoting Defendant's goods and services depicting a scene on a yacht with a male main character and his beautiful female friend dancing.

75. The focus of the Infringing Video is the male subject character that apparently represents "YOUR BOSS" who is having "the nicer the vacation" at the expense of the viewer.

76. The male subject of the Infringing Video does not have an appearance of a typical boss. Rather, the E*Trade Character is a heavily-tattooed male with bare torso dancing with a beautiful female companion.

77. As is evident from a visual comparison of the scenes in the Infringing Video and in the Plaintiff's Videos, and from a visual comparison of the Plaintiff's Character together with Plaintiff's likeness and the male subject of the Infringing Video, the Infringing Video misappropriates the Plaintiff's likeness, Plaintiff's Character, mood, setting, theme, pace, and total content and feel of the Plaintiff's Videos and Plaintiff's Character.

78. There are many apparent similarities between the male subject of the Infringing Video and the Plaintiff's Character. For example, both have gray/salt-and-pepper hair with the same hairstyle, both have well-manicured gray beards, both wear eyeglasses square in shape and of a similar look, both are shirtless with heavily tattooed bodies, both are in excellent physical condition, and they wear similar clothing.

79. The portraits of the subject character of the Infringing Video and the Plaintiff's Character are illustrated below.

Plaintiff's Character in the video Registration # PA0002158110



E*Trade Character:




Plaintiff's Character on Plaintiff's Instagram in 2016



80. Comparisons of screenshots are additionally attached as Exhibit B.

81. The total concept and feel of the Infringing Video is, as a whole, substantially similar to the Plaintiff's Videos, as well as the Plaintiff's Unregistered Videos, and Plaintiff's Social Media photographs. As evidenced by the screenshots of the Infringing Video and Plaintiff's Videos, the Infringing video simply depicts the entire portrait of Plaintiff's Character in the environment Plaintiff's Character typically appears.

Scenes from Plaintiff's Videos with Plaintiff's character





Scene from the Infringing Video



82. The images of the E*Trade Character of the Infringing Video's are strikingly similar to the likeness of Plaintiff and to Plaintiff's Character: (i) both characters are white males with an identical silver-colored hair, hair styles, and the styles of facial hair; (ii) both characters wear a pair of square-shaped s sunglasses; (iii) both characters are depicted with their torso unclothed; (iv) the nude parts of torso of the both characters are covered with various similar tattoos; (v) both characters are dancing; (vi) the dancing partner of both characters is a younger good-looking woman; and (vii) both characters are dancing in on a yacht demonstrating lavish lifestyle and luxury; (viii) both characters are dancing with their main partner: a beautiful younger woman in a swimming suit.

83. Not only is the visual similarity striking, when the terms "vacchi e*trade" or "Gianluca e*trade" are searched on Google, the first videos shows are the Infringing Video publications. The screenshot of such searches is attached as Exhibit C[2].

84. The Second Infringing Video is, analogously, a commercial promoting Defendant's goods and services depicting a scene on a yacht with the E*Trade Character present and dancing in the background in the same manner as in the Infringing Video.



[2] To avoid any doubts the search was conducted with the names of random individuals and E*Trade. These searches did not return a result with the Infringing Video.

85. Apparently, the E*Trade Character, recreating the image of the Plaintiff's Character, became so popular that Defendant made a decision to utilize it for multiple Defendant's promotional materials.



86. As a result, the general public perceive the Infringing Video and the Second Infringing Video as a video with a Plaintiff's Character and/or as a video endorsed by or in connection with Plaintiff.

***COUNT I -- COPYRIGHT INFRINGEMENT – VIDEOS***

87. Plaintiff repeats and realleges each and every allegation in the above paragraphs as if set forth fully herein.

88. Plaintiff's Videos and Plaintiff's Unregistered Videos are original works of authorship fixed in a tangible medium of expression that constitutes a motion picture and/or audiovisual work pursuant to 17 U.S.C. § 102(a), subject to copyright protection under the Copyright Act, 17 U.S.C. §§ 101, *et seq*.

89. Plaintiff's Photos are original works of authorship fixed in a tangible medium of expression that pictorial works pursuant to 17 U.S.C. § 102(a), subject to copyright protection under the Copyright Act, 17 U.S.C. §§ 101, *et seq*.

90. Plaintiff has the right and standing to enforce his exclusive rights to the Plaintiff's

Videos, Plaintiff's Unregistered Videos, Plaintiff's Photos, and their respective copyrightable component parts.

91. Defendant had access to the Plaintiff's Videos, Plaintiff's Unregistered Videos, Plaintiff's Photos.

92. By producing, transmitting, and distributing the Infringing Video and the Second Infringement Video Defendant has reproduced, prepared derivative works based upon, publicly performed, and distributed copies of substantial portions of the protectable scenes of Plaintiff's Videos, Plaintiff's Unregistered Videos, Plaintiff's Photos, without Plaintiff's permission or authorization: all in violation of 17 U.S.C. §§ 106 and 501. Defendant continues to do so.

93. Defendant's conduct constituted, and continues to constitute, infringement upon Plaintiff's exclusive rights to reproduce, prepare derivative works based upon, publicly perform, and distribute of the protectable scenes of Plaintiff's Videos, Plaintiff's Unregistered Videos, Plaintiff's Photos.

94. Defendant's infringement was, and continues to be, intentional, deliberate, willful, malicious, and in blatant disregard of Plaintiff's exclusive rights.

95. Defendant's infringing conduct has caused Plaintiff to suffer damages and harm, including, but not limited to, lost derivative market exploitation opportunity, lost revenues and profits, loss of creative attribution, and other damages, the exact nature of which will be proven at trial.

96. Plaintiff is entitled to an award against Defendant for the recovery of Defendant's profits attributable to the infringement and/or Plaintiff's actual damages, and other statutory damages and attorneys' fees pursuant to 17 U.S.C. §§ 504 and 505.

### *COUNT II -- COPYRIGHT INFRINGEMENT – PLAINTIFF'S CHARACTER*

97. Plaintiff repeats and realleges each and every allegation contained in the above paragraphs as if set forth fully herein.

98. Plaintiffs Videos and Plaintiff's Unregistered Videos are original works of authorship fixed in a tangible medium of expression that constitutes a motion picture and/or audiovisual work pursuant to 17 U.S.C. § 102(a), subject to copyright protection under the Copyright Act, 17 U.S.C. §§ 101, *et seq*..

99. Plaintiff's Photos are original works of authorship fixed in a tangible medium of expression that pictorial works pursuant to 17 U.S.C. § 102(a), subject to copyright protection under the Copyright Act, 17 U.S.C. §§ 101, *et seq.*

100. Plaintiff has the right and standing to enforce his exclusive rights to the Plaintiff's Videos, Plaintiff's Unregistered Videos, Plaintiff's Photos, and their respective copyrightable component parts.

101. Defendant had access to the Plaintiff's Videos, Plaintiff's Unregistered Videos, Plaintiff's Photos.

102. By producing, transmitting, and distributing the Infringing Video and the Second Infringing Video, Defendant has reproduced, prepared derivative works based upon, publicly performed, and distributed copies of substantial portions of the protectable character, Plaintiff's Character, of Plaintiff's Videos, Plaintiff's Unregistered Videos, Plaintiff's Photos, without Plaintiff's permission or authorization: all in violation of 17 U.S.C. §§ 106 and 501. Defendant continues to do so.

103. Defendant's conduct constituted, and continues to constitute, infringement upon Plaintiff's exclusive rights to reproduce, prepare derivative works based upon, publicly perform,

and distribute of the protectable character, Plaintiff's Character, of Plaintiff's Videos, Plaintiff's Unregistered Videos, Plaintiff's Photos.

104. Defendant's infringement was, and continues to be, intentional, deliberate, willful, malicious, and in blatant disregard of Plaintiff's exclusive rights.

105. Defendant's infringing conduct has caused Plaintiff to suffer damages and harm, including, but not limited to, lost derivative market exploitation opportunity, lost revenues and profits, loss of creative attribution, and other damages, the exact nature of which will be proven at trial.

106. Plaintiff is entitled to an award against Defendant for the recovery of Defendant's profits attributable to the infringement and/or Plaintiff's actual damages, and damages and attorneys' fees pursuant to 17 U.S.C. §§ 504 and 505.

***COUNT III -- VIOLATION OF 15 U.S.C. § 1125(A)***

107. Plaintiff repeats and realleges each and every allegation contained in the above paragraphs as if set forth fully herein.

108. Defendant has effected a false endorsement of Defendant's services featuring Plaintiff's likeness in the Infringing Video. Defendant's conduct has implied, falsely, that Plaintiff and or Plaintiff's character endorse the Defendants services.

109. Defendant' conduct further amounts to a misappropriation of Plaintiff's celebrity persona, the trademark of which is owned by Plaintiff.

110. Defendant' conduct further amounts to both false association and unfair competition as defined in the Lanham Act.

111. Defendant' conduct has caused Plaintiff to suffer losses in an amount equal to the full extent of recoverable damages permitted under the Lanham Act. Specifically, Plaintiff seeks

to recover his actual damages (including a reasonable license fee), the Defendants' profits, treble damages, attorney's fees, costs of suit, and interest.

***COUNT IV-- VIOLATION OF N.Y. CIVIL RIGHTS LAW §51***

112. Plaintiff repeats and realleges each and evert allegation contained in the above paragraphs as if set forth fully herein.

113. As alleged above, Defendant knowingly, intentionally, and maliciously, used, published, and disseminated, and continue to knowingly use, publish and disseminate, Plaintiff's likeness, persona, picture, and/or image within the State of New York, for purposes of advertising and/or trade, to promote the sale Defendant's services, without Plaintiff's written consent; and Defendants have caused to be transferred, circulated, sold, distributed, used, displaced, advertised, reproduced and/or published, both directly and indirectly, through diverse media, certain unauthorized representations of Plaintiff's likeness, persona, picture, and/or image. Defendants' conduct, which continues unabated, constitutes an unauthorized use of Plaintiff's likeness, persona, picture, and/or image, for an advertising and/or trade purpose, as defined under and/or pursuant to N.Y. Civil Rights Law § 51.

114. Defendant's conduct has caused Plaintiff to suffer losses in an amount equal to the full extent of the damages permitted under N.Y. Civil Rights Law § 51. Specifically, he seeks to recover his actual damages (including a reasonable license fee), the Defendant's ill-gotten profits gained from the aforesaid wrongful conduct, punitive damages, litigation costs, and interest.

115. Defendant has engaged in this exploitation of Plaintiff's identity and persona for its own personal and commercial gain, and Defendant has maliciously and unlawfully invaded Plaintiff's privacy and/or publicity rights in violation of §§ 50 and 51 of the N.Y. Civil Rights Law.

116. Defendant has caused Plaintiff to suffer serious irreparable harm, and caused him to be held to public view in a damaging manner, and as a direct and proximate result, Plaintiff has suffered and continues to suffer severe damages, including but not limited to a loss of personal and professional reputation and goodwill, lost earnings, and lost potential earnings, all in a sum not less than $1,000,000.00.

117. Plaintiff's measure of compensatory damages, likewise, includes the extent to which Defendants' use of Plaintiff's image, persona, likeness, and/or picture, increased, and continues to increase, Defendant's profits.

118. In addition, the reprehensibility of Defendant's conduct, in knowingly and maliciously using, publishing, and disseminating Plaintiffs image, persona, likeness, and/or picture, and Defendant's prolonged knowing and malicious continued use, publication and dissemination, as aforesaid, in wanton and reckless disregard of the harm caused to Plaintiff, and for the selfish motivation of increasing their profits, gives rise to punitive damages in favor of Plaintiff and against Defendants in a sum not less than $1,000,000.00.

***DEMAND FOR RELIEF***

**WHEREFORE**, Plaintiff demands judgment against Defendants follows:

(a) Declaring that Defendant's conduct was willful and that Defendant was aware of its infringing activity;

(b) Permanently (i) enjoining Defendant, its officers, agents, employees, licensees and assigns, and all persons acting in concert with them, from misappropriation of Plaintiff's likeness and Plaintiff's Character in any manner; and (ii) enjoining Defendants, their officers, agents, employees, licensees and assigns, and all persons acting in concert with them, from engaging in or authorizing the production,

reproduction, distribution and/or exploitation of any motion pictures based in whole or in part on the misappropriated scenes from Plaintiff's Videos, Plaintiff's Unregistered Videos, and Plaintiff's Photos, misappropriated Plaintiff's Character, and Plaintiff's likeness.

(c) On Count I, in favor of Plaintiff an against Defendant, for compensatory damages in an amount to be determined at trial and/or for statutory damages (or, should Plaintiff so elect, in lieu thereof, statutory damages as provided by 17 U.S.C. § 504(c) of up to $150,000 for each infringement), and for exemplary and punitive damages, arising from contravention of the Copyright Act of 1976, 17 U.S.C. §§ 501 together with attorneys' fees and costs pursuant to 17 U.S.C. § 505 and otherwise according to law;

(d) On Count II, in favor of Plaintiff and against Defendant for compensatory damages in an amount to be determined at trial and/or for statutory damages (or, should Plaintiff so elect, in lieu thereof, statutory damages as provided by 17 U.S.C. § 504(c) of up to $150,000 for each infringement), and for exemplary and punitive damages, arising from contravention of the Copyright Act of 1976, 17 U.S.C. §§ 501 together with attorney's fees and costs pursuant to 17 U.S.C. § 505 and otherwise according to law;

(e) On Count III, in favor of Plaintiff and against Defendant, for compensatory damages in an amount to be determined at trial, but in no event less than $1,000,000.00, plus treble damages, and attorney's fees;

(f) On Count IV, in favor of Plaintiff and against Defendant, for compensatory damages in an amount to be determined at trial, but in no event than $1,000,000.00,

plus punitive damages in a sum not less than $1,000,000.00, and attorney's fees together with costs and disbursement incurred in this action; and

(g) For his costs and disbursement in this action, including his reasonable attorneys' fees; and

(h) For such other and further relief as the Court deems just and proper.

Dated: New York, New York
April 19, 2019

CARMEL, MILAZZO & DiCHIARA LLP

By: /s/ Christopher P. Milazzo
Christopher P. Milazzo
55 West 39th Street, 18th Floor
New York, New York 10018
(212) 658-0458 (tel.)
(646) 838-1311 (fax)
cmilazzo@cmdllp.com

CINOTTI LLP

By: /s/ Jake Brainard
Jake Brainard
11 Broadway, Suite 368
New York, New York 10004
(212) 825-0489 (tel.)
(646) 478-9147 (fax)
jbrainard@cinottistone.com

*Attorneys for Plaintiff*

## Exhibit A

1. Screenshot from Instagram https://www.instagram.com/p/BMdG5YnjB_X/



2. Screenshot from Instagram https://www.instagram.com/p/BMSOrgiDHi0/



3. Screenshot from Instagram https://www.instagram.com/p/BMSOrgiDHi0/



4. Screenshot of Plaintiff's Video, second 12



5. Screenshot Instagram video https://www.instagram.com/p/BJsez0UDoQ-/



6 Instagram https://www.instagram.com/p/BJIV87Oj8lp/



7 Instagram https://www.instagram.com/p/BI2P-mljP5e/



8. Instagram https://www.instagram.com/p/BImuBzWDB8y/



9. Instagram https://www.instagram.com/p/BIfPokGD8WN/



10 Instagram https://www.instagram.com/p/BHpiKVODE20/



**Exhibit B**

Portrait Comparison

Protagonist of the Infringement Video:




Plaintiff's Character:



Plaintiff's Character:



Protagonist of Infringing Video:



Dancing Couple on Infringing Video




Dancing couple of Plaintiff's Videos



# Exhibit C


Gianluca e*trade - Google Search
https://www.google.com/search?q=Gianluca+e*trade&oq=Gianluca+e*trade&aqs=chrome..69i57.1040j0j1&sourceid=chrome&ie=UTF-8
NYSCEF
FedEx Ship Manage...
Westlaw
SEC.gov | Company...
Dashboard | Bill4Ti...
FileMaker Instant W...
Insitu Biologics PP...
certif
Simple Interest Calc...
Securities Lawyer's ...
Money Metals Exch...
Google
Gianluca e*trade
Search
Sign in
All
News
Images
Maps
Videos
More
Settings
Tools
About 3,520,000 results (0.36 seconds)
Videos
0:16
E*TRADE Commercial – Hard Work
E*TRADE
YouTube - Jun 19, 2017
How to choose stocks to invest in | Learn More
Etrade - Aug 2, 2017
2:50
Gianluca Puttini Responsabile Marketing e Trade Marketing Alce Nero
Gruppo Food
Vimeo - May 12, 2017
People also ask
What is Etrade and how does it work?
How much does Etrade charge per trade?
How much does it cost to start an Etrade account?
Is Etrade publicly traded?
Feedback
E-Trade's New Ad Campaign Is Everything That's Wrong With Capitalism
https://www.fastcompany.com/.../e-trades-new-ad-campaign-is-everything-thats-wron...
Jun 20, 2017 - By using opulence to sell its investment services, the online broker patches together a plutocratic vision of the American dream, ignoring how ...
Instagram millionaire Gianluca Vacchi's 'yachts and properties' seized ...
https://www.independent.co.uk › News › World › Europe
3:19 PM
3/26/2019