UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------X

GIANLUCA VACCHI,

Plaintiff,

-v-

E*TRADE FINANCIAL CORPORATION,

Defendant.

---------------------------------------X

19cv3505 (DLC)

OPINION AND ORDER

APPEARANCES:

For plaintiff:
Christopher Philip Milazzo
Carmel, Milazzo & DiChiara LLP
55 West 39th Street 18th Floor
New York, NY 10018
(212) 658-0458

For defendant:
Adam Michael Lazier
Marcia Beth Paul
Davis Wright Tremaine LLP (NYC)
1251 Avenue of the Americas
New York, NY 10020
(212) 489-8230

DENISE COTE, District Judge:

Defendant E*TRADE Financial Corporation ("E*Trade") has moved pursuant to Rule 12(b)(6), Fed. R. Civ. P., to dismiss Gianluca Vacchi's ("Vacchi") copyright, trademark, and privacy law claims against it. E*Trade's motion to dismiss is granted.

## BACKGROUND

Unless otherwise noted, the following facts are taken from the complaint and assumed to be true for the purpose of addressing this motion. Vacchi is an entrepreneur who lives in Milan, Italy. He is the president of a large Italian manufacturing company.

Vacchi also has a significant social media presence. More than 11.9 million people follow Vacchi's Instagram page, and more than 1.77 million people follow his Facebook page. He uses Instagram and Facebook as platforms upon which to post videos, pictures, and musical clips that he produces.

Vacchi alleges that his media postings feature a character of Vacchi's "own creation." The character is played by Vacchi, uses Vacchi's name, and has traits based on Vacchi's personality. Nonetheless, the character that appears in Vacchi's social media is one that Vacchi has "authored and created." The character is separate and apart from the man, Gianluca Vacchi.

As alleged, the character created by Vacchi is "an extravagant millionaire dancing with beautiful ladies in exotic locations." He is "a successful daring business person who is capable of doing things his own way." He is "tired of his business routine [and] decides to dedicate his life to music, dancing, and an opulent lifestyle."

Vacchi has registered five videos with the United States Copyright Office (the "Registered Videos"). They all feature the above-described character. As seen in the Registered Videos, this character has distinctive physical features.[1] He is an older gentleman with short white/gray hair and square-shaped glasses. He has a neatly trimmed, salt-and-pepper beard, which, in four of the five videos, is tied into a knot beneath his chin. In each of the Registered Videos, he is topless, at least for a portion of the video. He is in prime physical shape, and his body is covered in tattoos. The tattoos on his torso appear to be script writing. In four of the five videos, he wears shorts or swimming trunks, with the left leg of the garment rolled up. Also in four videos, he wears a cuff around his left ankle, and metal cuffs around both of his wrists.

In the Registered Videos, Vacchi's character DJ's or dances to music with younger, bikini clad-women on a boat or, in one case, by a pool. The videos last from thirty-five seconds to one minute, and they have neither text nor dialogue. In three of the videos, Vacchi's character performs a choreographed dance with a younger woman. At times, they face each other and dance in sync.

[1] The descriptions of the Registered Videos are the Court's.

In 2007, E*Trade released two professionally-shot commercials (the "E*Trade commercials").[2] In one commercial, entitled Hard Work, an older gentleman appears on a boat. The man has a neatly trimmed, salt-and-pepper beard and square-shaped glasses. His tattooed torso is exposed beneath suspenders, although he lacks the muscle definition of Vacchi's character. He is wearing long striped pants. The first two seconds of Hard Work show the man dancing to music. For two more seconds, the shot is of a younger, taller woman in a one-piece bathing suit, also dancing to music. For another two seconds, the man and woman dance together, face-to-face. For the last nine seconds of the commercial, the screen goes white, and black text appears with the words, "The harder you work the nicer the vacation . . . your boss goes on," followed by the slogan, "Don't get mad . . . get E*TRADE."

In the second commercial, which runs for 30 seconds and is entitled Yacht Life, the man from Hard Work makes a brief appearance. The commercial opens with a shot of two paddleboarders that are passed by a yacht. The frame quickly shifts to the yacht, where a young man is dancing. The camera follows the young man throughout the boat, until he arrives at a dance party on the bow. Among young men and young women who are

---

[2] The descriptions of the E*Trade commercials are the Court's.

dancing in the background, is the older man from Hard Work. He is on screen for no longer than four seconds. White text appears that says "The dumbest guy in high school just got a boat." The video resumes with the young man jumping off the boat, and the appearance of text that says "Don't get mad . . . get E*TRADE."

On April 19, 2019, Vacchi initiated the instant action. In his complaint, Vacchi alleges that the E*Trade commercials infringe his copyright in the Registered Videos, the character that appears in these videos, and certain other works that are not registered with the United States Copyright Office (the "Unregistered Works"). Vacchi also pleads trademark infringement claims under § 43(a) of the Lanham Act and state privacy law claims under § 51 of the New York Civil Rights Law. On June 24, E*Trade filed a motion to dismiss. The motion was fully submitted on August 9.[3]

**DISCUSSION**

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Geffner v. Coca-Cola Co., 928 F.3d 198, 199 (2d Cir. 2019) (citation omitted). "A

---

[3] Vacchi does not oppose dismissal of his copyright infringement claims as to the Unregistered Works. He also does not oppose dismissal of his state law claim on statute-of-limitation grounds. Dismissal of these claims is therefore granted.

claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Charles v. Orange County, 925 F.3d 73, 81 (2d Cir. 2019) (citation omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Empire Merchants, LLC v. Reliable Churchill LLLP, 902 F.3d 132, 139 (2d Cir. 2018). The plaintiff must plead enough facts to "nudge[] [his] claims across the line from conceivable to plausible . . . ." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007).

When a party moves to dismiss for failure to state a claim upon which relief can be granted under Rule 12(b)(6), Fed. R. Civ. P., a court must "constru[e] the complaint liberally, accept[] all factual allegations as true, and draw[] all reasonable inferences in the plaintiff's favor." Coalition for Competitive Electricity, Dynergy Inc. v. Zibelman, 906 F.3d 41, 48-49 (2d Cir. 2018) (citation omitted). "A complaint is . . . deemed to include any written instrument attached to it as an exhibit, materials incorporated in it by reference, and documents that, although not incorporated by reference, are 'integral' to the complaint." Sierra Club v. Con-Strux, LLC, 911 F.3d 85, 88 (2d Cir. 2018) (citation omitted).

## I. Copyright Infringement

E*Trade moves to dismiss Vacchi's claims that its commercials infringe his copyright in the Registered Videos and the character that appears therein. To establish "copyright infringement, a plaintiff must allege both (1) ownership of a valid copyright and (2) infringement of the copyright by the defendant." Spinelli v. Nat'l Football League, 903 F.3d 185, 197 (2d Cir. 2018) (citation omitted).[4]

Registration with the United States Copyright Office is prima facie evidence of ownership of a valid copyright, the first element of copyright infringement. Scholz Design, Inc. v. Sard Custom Homes, LLC, 691 F.3d 182, 186 (2d Cir. 2012). E*Trade does not dispute that Vacchi holds valid copyright registrations in the Registered Videos.

To satisfy the second element of an infringement claim, a plaintiff must show both that his work was actually copied and that copying was wrongful. Jorgensen v. Epic/Sony Records, 351 F.3d 46, 51 (2d Cir. 2003) (citation omitted). Copying may be established by indirect evidence, including access to the original work. Id. E*Trade does not dispute that it had access

[4] Section 411(a) of the Copyright Act of 1976 prohibits the filing of an "action for infringement of the copyright in any United States . . . until preregistration or registration of the copyright claim has been made." 17 U.S.C. § 411(a).

to the Registered Videos, so copying is assumed for purposes of this Opinion.

To establish wrongful copying, a plaintiff must show a "substantial similarity" between the defendant's work and protectible elements of his own work. Boisson v. Banian, Ltd., 273 F.3d 262, 268 (2d Cir. 2001). "When an original work contains many unprotected elements, . . . a close similarity between it and a copy may prove only copying, not wrongful copying." Zalewski v. Cicero Builder Dev., Inc., 754 F.3d 95, 101 (2d Cir. 2014). "This is because the similarity may derive only from these unprotected elements." Id.

It is fundamental to copyright law that protection is only afforded to "'original works of authorship,' those aspects of the work that originate with the author himself." Id. at 102 (citing 17 U.S.C. § 102(a)); see also N.Y. Mercantile Exch., Inc. v. IntercontinentalExch., Inc., 497 F.3d 109, 113 (2d Cir. 2007) ("The sine qua non of copyright is originality.") (citation omitted).

> Everything else in the work, the history it describes, the facts it mentions, and the ideas it embraces, are in the public domain free for others to draw upon. It is the peculiar expressions of that history, those facts, and those ideas that belong exclusively to their author.

Zalewski, 754 F.3d at 102.

The "scènes-à-faire" doctrine "separate[s] protectable expression from elements of the public domain." Id. Under the scènes-à-faire doctrine, "elements of a work that are indispensable, or at least standard, in the treatment of a given topic -- like cowboys, bank robbers, and shootouts in stories of the American West -- get no protection." Id. (citation omitted). "[T]he common use of such stock merely reminds us that in Hollywood, as in the life of men generally, there is only rarely anything new under the sun." Williams v. Crichton, 84 F.3d 581, 588 (2d Cir. 1996) (citation omitted).

To determine whether a plaintiff has established wrongful copying, courts "usually apply the ordinary observer test and ask whether the ordinary observer, unless he set out to detect the disparities, would be disposed to overlook them, and regard their aesthetic appeal as the same." Zalewski, 754 F.3d at 102 (citation omitted). But, "when faced with works that have both protectible and unprotectible elements, [the] analysis must be more discerning." Peter F. Gaito Architecture, LLC v. Simone Dev. Corp., 602 F.3d 57, 66 (2d Cir. 2010) (citation omitted). In such cases, a court "must attempt to extract the unprotectible elements from . . . consideration and ask whether the protectible elements, standing alone, are substantially similar." Id. (citation omitted).

While courts never "are required to dissect the works into their separate components, and compare only those elements which are in themselves copyrightable," id. (citation omitted), courts reviewing works with protectible and unprotectible elements "must begin by dissecting the copyrighted work into its component parts in order to clarify precisely what is not original." Tufenkian Import/Export Ventures, Inc. v. Einstein Moomjy, Inc., 338 F.3d 127, 134 (2d Cir. 2003). It is then appropriate to "examine the similarities in such aspects as the total concept and feel, theme, characters, plot, sequence, pace, and setting of" the works. Williams, 84 F.3d at 588. A plaintiff fails to establish copyright infringement "[w]hen the similarities between the protected elements of [the] plaintiff's work and the allegedly infringing work are of small import quantitatively or qualitatively." Id. (citation omitted).

The Second Circuit recognizes that copyright protection for characters results when they are embodied in original works of authorship that are themselves protected by the law of copyright. Warner Bros. Inc. v. Am. Broad. Cos., 720 F.2d 231, 235 (2d Cir. 1983) ("Plaintiffs own the copyrights in various works embodying the character Superman and have thereby acquired copyright protection for the character itself."). But, "the less developed the characters, the less they can be copyrighted; that is the penalty an author must bear for marking them too

indistinctly." Williams, 84 F.3d at 589 (quoting Nichols v. Universal Pictures Corp., 45 F.2d 119, 121 (2d Cir. 1930) (Learned Hand, J.)).

A district court in the Second Circuit may resolve a "substantial similarity" challenge on a Rule 12(b)(6) motion to dismiss. Peter F. Gaito Architecture, 602 F.3d at 64. "[I]t is entirely appropriate for the district court to consider the similarity between those [relevant] works in connection with a motion to dismiss, because the court has before it all that is necessary in order to make such an evaluation." Id. "When a court is called upon to consider whether the works are substantially similar, no discovery or fact-finding is typically necessary, because what is required is only a . . . comparison of the works." Id. (citation omitted).

**A. The Registered Videos**

E*Trade argues that Vacchi's claim for infringement of the Registered Videos must be dismissed because they are not substantially similar to the E*Trade commercials. It is correct.

The E*Trade commercial Yacht Life is not substantially similar to the Registered Videos. Yacht Life is focused on "the dumbest guy in high school," who recently purchased a yacht. He is seen dancing throughout the boat, either alone or in a group of people, who are primarily peers his own age. The subject of

the Registered Videos, by contrast, is an older man, Vacchi's character. In two videos, he acts as a DJ at a dance party aboard a boat. In three videos, he performs a choreographed dance with a younger woman. The Registered Videos are character-driven works that focus on a character with no similarities to the main subject of Yacht Life. There is thus no basis for finding substantial similarity between this commercial and the Registered Videos.

To the extent that similarities exist between the E*Trade commercial Hard Work and the Registered Videos, these elements are not protectible. Two of the Registered Videos, like Hard Work, depict an older man dancing with a younger woman on a boat, as music plays in the background. This type of scene does not provide a basis for finding substantial similarity. See Hoehling v. Universal City Studios, Inc., 618 F.2d 972, 979 (2d Cir. 1980) (recognizing that scenes of soldiers celebrating in a beer hall are scènes à faire). Neither does the implied relationship between an older man and a younger woman. A stock character in any work depicting a relationship between an older man and younger woman is, necessarily, the older man and the younger woman. See Walker v. Time Life Films, Inc., 784 F.2d 44, 50 (2d Cir. 1986) (noting that an Irish cop is a stock character in any piece of police fiction). Thus, the depiction of the older man dancing with a younger woman and the sunny,

marine environment are not entitled to protection under copyright law.

Vacchi argues that these elements render the Registered Videos substantially similar to both E*Trade commercials because they all "take place around the same event: a DJ-style dancing party in a marine-themed environment." He also argues that the "structure and style" of the Registered Videos and E*Trade commercials are the same, in that they are "relatively short and the characters interact solely through dancing and demonstrating their intents, feelings, and motions through their body language."

These general descriptions obscure obvious differences between the works in question. As discussed, Yacht Life focuses on a character who has no similarities to the man featured in Vacchi's Registered Videos. And in Hard Life, the music, the boats, the dancing, and the cinematography differ substantially from those in the Registered Videos. "In copyright infringement actions, the works themselves supersede and control contrary descriptions of them, including any contrary allegations, conclusions or descriptions of the works contained in the pleadings." Peter F. Gaito Architecture, 602 F.3d at 64 (citation omitted).

Recognizing as much, Vacchi concedes that these elements are each "unprotected." He argues, however, that the "[t]he

totality of the specifically arranged unprotected elements" are "protectable." But, viewed from this vantage point as well, there is no substantial similarity in the arrangement of the unprotected elements. The similarity amounts to little more than their joint reliance on a scène à faire to create an ambiance.

**B. The Character**

Even if the E*Trade commercials do not infringe his copyright in the Registered Videos, Vacchi argues that the E*Trade commercials infringe his copyright in the character depicted in the Registered Videos. The Second Circuit recognizes that characters who are embodied in original works of authorship may be entitled to copyright protection. See Warner Bros. Inc., 720 F.2d at 235. Nonetheless, this claim also must be dismissed.

It is true that Vacchi's character shares certain similarities with the male character depicted in Hard Work, who also appears briefly as a background dancer in Yacht Life. Both men have neatly trimmed, salt-and-pepper beards, square-shaped glasses, and exposed torsos with tattoos. They also both enjoy dancing with younger women.

That is, however, where the similarities end. The E*Trade character lacks many of the most distinctive physical attributes of Vacchi's character. The E*Trade character is not fit, and

his tattoos do not resemble those of Vacchi's character. He does not roll up the leg of his shorts, and instead wears trousers with suspenders. His beard does not end in a knot, and he does not wear the ankle bracelet or wrist cuffs seen on the character of Vacchi. Assuming without deciding that Vacchi's character is sufficiently delineated to enjoy protection under copyright law, the differences between the Vacchi character and the E*Trade character prevent a finding of substantial similarity between them as they appear in the Registered Videos and the E*Trade commercials.

Vacchi counters that the character in the E*Trade commercials is an "exact match" for his own, which he describes as

> a middle-aged, male playboy, with gray/salt-and-pepper hair and beard, is heavily tattooed, wears black rim glasses, is shirtless, and is in good physical shape. [They] share the same love of boats, dancing, partying and women (all of whom are visibly younger than the main character.)

Apart from the differences in physiques, this description largely captures qualities shared by the E*Trade and Vacchi character. It ignores, however, the myriad other features that distinguish the two men. Of course, this description also underscores how much the character defined by Vacchi reflects the stock character of the older man as playboy.

Vacchi also disputes E*Trade's contention that he is improperly attempting to copyright his own life. The character in the Registered Videos, he asserts, is not him. It is his creation. At this phase of the litigation, it is accepted as true that the man who appears in the Registered Videos is a character created by Vacchi. But, this has no bearing on whether the character, assuming he is sufficiently delineated in the Registered Videos to achieve copyright protection, is substantially similar to the character depicted by E*Trade.

Vacchi further contends that his character is not undeserving of copyright protection simply because his "attire slightly changes from work to work, and sometimes is seen dancing and other times seen DJ'ing." That is correct, but not relevant. Here, the problem is not the minor adjustments to Vacchi's character among the Registered Videos. It is the dissimilarities between the consistent qualities of Vacchi's character and those of the E*Trade character.

Finally, Vacchi protests E*Trade's characterization of his character as a "'stock character' not entitled to protection." Again, this argument fails to address the flaw in Vacchi's claim against E*Trade. Assuming Vacchi has a valid copyright in his character, E*Trade has not infringed this right through the depiction of a dancing, bare-torsoed older man in its commercials.

## II. False Endorsement

E*Trade moves to dismiss Vacchi's claim that it used his likeness or persona to falsely imply that Vacchi or Vacchi's character endorsed E*Trade in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a)(1). Courts have applied Section 43(a) to protect the "'persona' of an artist against false implication of endorsement generally resulting from the use of look-alikes." Oliveira v. Frito-Lay, Inc., 251 F.3d 56, 62 (2d Cir. 2001).

To prevail on a claim under Section 43(a), a plaintiff must establish that "the defendant's use of the allegedly infringing mark would likely cause confusion as to the origin or sponsorship of the defendant's goods with plaintiff's goods." Starbucks Corp. v. Wolfe's Borough Coffee, Inc., 588 F.3d 97, 114 (2d Cir. 2009). This test has been applied by courts reviewing celebrity false endorsement claims. See e.g., Fifty-Six Hope Road Music, Ltd. A.V.E.L.A., Inc., 778 F.3d 1059, 1069 (9th Cir. 2015); Facenda v. N.F.L. Films, Inc., 542 F.3d 1007, 1020 (3d Cir. 2008); Bruce Lee Enters., LLC v. A.V.E.L.A., Inc., No. 10 Civ. 2333(LTS), 2011 WL 1327137, at *5 (S.D.N.Y. Mar. 31, 2011); Allen v. Nat'l Video, Inc., 610 F. Supp. 612, 627 (S.D.N.Y. 1985). In the Second Circuit, when a plaintiff fails to establish "substantial similarity" in a parallel claim for copyright infringement, he has "little basis for asserting a

likelihood of confusion . . . for purposes of a claim under [S]ection 43(a) of the Lanham Act." Warner Bros. Inc., 720 F.2d at 246 (citation omitted).

As discussed, Vacchi has failed to state a claim for copyright infringement because he cannot establish substantial similarity between the protectible elements of the character in the Registered Videos and the E*Trade commercials. Vacchi therefore cannot state a claim that E*Trade violated Section 43(a) of the Lanham Act by falsely implying that Vacchi or his character endorsed E*Trade.

Vacchi does not dispute that his Lanham Act claim must fail if he cannot establish substantial similarity for purposes of his copyright infringement claim. E*Trade's motion to dismiss Vacchi's Lanham Act claim is therefore granted.[5]

[5] Vacchi argues that it would be inappropriate to dismiss either his copyright infringement or Lanham Act claim based on E*Trade's fair use defense. As dismissal of Vacchi's claims have been granted because he has failed to establish substantial similarity or likelihood of confusion, it was not necessary to address fair use.

## CONCLUSION

E*Trade's June 24, 2019 motion to dismiss is granted. The Clerk of Court shall close this case.

Dated: New York, New York
September 13, 2019

DENISE COTE
United States District Judge